Susan Martin (AZ #014226)
Jennifer Kroll (AZ #019859)
Michael M. Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
smartin@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Koch,<br><br>        Plaintiff, on behalf of himself and all others similarly situated<br><br> v.<br><br>Desert States Employers & UFCW Unions Pension Plan; Board of Trustees of the Desert States Employers & UFCW Unions Pension Plan, Plan Administrator of the Desert States Employers & UFCW Unions Pension Plan,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Robert Koch, by and through undersigned counsel, hereby brings this action under the Employee Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.* for benefits and to declare his rights under the terms of the Desert States Employers & UFCW Unions Pension Plan and to enforce his rights and remedy violations of the Plan and ERISA.   On behalf of himself and all others similarly situated, Plaintiff alleges, *inter alia*, that when he commenced receipt of retirement benefits several years after attainment of normal retirement age, Defendants failed to pay him that portion

of his nonforfeitable vested retirement benefits attributable to the years following his attainment of normal retirement age to account for the delay past his Normal Retirement Date. Plaintiff alleges on behalf of himself and all others similarly situated, *inter alia*, that on several occasions, the Defendants adopted and imposed and continue to impose amendments that violate ERISA by purporting to restrict the scope of employment that retired participants may engage in  both before and after attainment of normal retirement age; that they breached their fiduciary duties and duties of disclosure and failed to maintain and follow reasonable claims procedures.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to § 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

2.     Venue is proper pursuant to § 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391 because the claims arose, the breach took place and the pension plan is administered in the District of Arizona, and Defendants do business and may be found in this District.

## PARTIES

3.     From in or around 1971 to the present, Plaintiff Robert Koch ("Mr. Koch") was employed by various grocery store employers under collective bargaining agreements between those employers and Local 99 of Union of Food and Commercial Workers ("UFCW") pursuant to which employers contributed to the Desert States Employers & UFCW Unions Pension Plan and predecessor plans ("Plan").

4.     Mr. Koch is a participant under the Plan within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7).

5.     Defendant Plan is a defined benefit employee pension benefit plan within the meaning of § 3(2) of ERISA, 29 U.S.C. § 1002(2), which was established and maintained for the purpose of providing retirement benefits for participants and their beneficiaries, including Plaintiffs.

2

6.    Defendant Board of Trustees of the Desert States Employers & UFCW Pension Plan is the Administrator of the Plan and a fiduciary with respect to the Plan within the meaning of §§ 3(16)(A) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A), (21)(A).

## GENERAL ALLEGATIONS

### A. Mr. Koch's Employment and Commencement of Retirement Benefits

7.    From in or around 1971 through in or around 2001, during his employment under the Plan and prior to his retirement, Mr. Koch worked in the meat departments of grocery store employers that had contracts with United Food and Commercial Workers Local 99 and that had signed pension agreements requiring the employer to make contributions to the Pension Plan of the Intermountain Retail Food Industry Pension Trust Fund ("Intermountain Plan").

8.    Effective on or about July 1, 2005, the Plan accepted a transfer of assets and liabilities from the Intermountain Plan to the Plan and assumed responsibility for paying the vested accrued benefits owed to participants in the Intermountain Plan.

9.    As a result of his employment, Mr. Koch became vested and earned nonforfeitable rights to his accrued benefits.

10.    Since in or around May 2001 through the present, Mr. Koch has been working in the meat department of a grocery store employer that has a collective bargaining agreement with the UFCW and does not participate in nor contribute to the Plan.

11.    Mr. Koch reached the Plan's Normal Retirement Date in or around January 2013.

12.    Mr. Koch elected to retire from the Plan effective in or around May 2016 at age 65 and four months.

13.    At the time of his retirement, Mr. Koch was approximately three years and four months past age 62, his normal retirement age under the Plan which the Plan defines under a definition for Normal Retirement Date.

14.    When Mr. Koch retired, he did not receive any retroactive benefits with interest nor did he receive an actuarial increase in his benefits to account for the three years

and four months he did not collect his benefits following his attainment of normal retirement age.

15.    In or around May 2, 2018, the Plan notified Mr. Koch that he was working in Prohibited Employment for his work that began in 2001 and that the portion of his monthly benefits attributable to benefits he accrued after May 2, 1991 would be suspended for working in such employment and that he had purportedly been overpaid benefits he was paid while he worked at a different employer and that his benefits would be reduced by $341.50 each month going forward.

16.    On or about July 30, 2018 Mr. Koch repaid the Plan for the purported overpayment of benefits that the Plan stated was based on his Prohibited Employment and also on the same date requested in writing to the Plan Administrator that he be paid the pension benefits that the Plan failed to pay him from his attainment of normal retirement age under the Plan and the date he commenced his retirement benefits.

17.    Since August 1, 2018, the Plan has reduced and continues to reduce Mr. Koch's pension benefits by $341.50 each month.

18.    Defendants failed to respond to Mr. Koch's request and, despite Mr. Koch's follow-up requests, as of the date of this Complaint, Defendants have not responded to Mr. Koch's request for benefits.

19.    Mr. Koch has fully exhausted any required administrative remedies.

**B. The Plan**

20.    In or around January 1995, the Plan was established as a spin-off of a portion of the predecessor plan, the Rocky Mountain UFCW Unions & Employers Pension Plan (the "Rocky Mountain Plan") pursuant to a Transfer Agreement setting forth the terms and conditions governing the transfer of assets and liabilities from the Rocky Mountain Plan to the Plan.

21.    From on and after January 1, 1995, the Plan assumed responsibility for paying the vested accrued benefits owed to participants under the Rocky Mountain Plan for the liabilities and assets that were transferred to the Plan.

22.     The Intermountain Plan and Rocky Mountain Plan are collectively referred to as "predecessor plans".

23.     The Plan, including each of the predecessor plans, had provisions providing for the suspension of pension benefits for participants who retired and returned to certain types of employment following commencement of retirement benefits.

24.     The Plan refers to employment that may be suspended as "prohibited employment."

25.     At all relevant times, the Plan has provided that the "Normal Retirement Date" is age 62 (with certain limited date related exceptions not relevant here).

26.     The Plan further provides that if benefits are not suspended for working in "prohibited employment," participants who delay retiring until after their Normal Retirement Date will receive either retroactive benefits to their normal retirement date when they commence receipt of their pension benefits or an actuarial increase in their retirement benefits to account for the delay between Normal Retirement Date and the date they commence receipt of their monthly benefits.

27.     The Plan currently defines prohibited employment differently depending on when a participant's benefits were accrued, the participant's age and the participant's predecessor plan, if applicable.

28.     With respect to the benefits of retired former Intermountain Plan participants that accrued prior to May 2, 1991, prohibited employment is defined as employment following retirement for an Employer under the Plan for months in which the participant worked more than 40 hours for an employer who is required to make contributions to the Plan.

29.     With respect to the benefits of retired former Intermountain Plan participants that accrued on or after May 2, 1991, prohibited employment is defined as employment after retirement of 40 hours or more during a month:

　　　　　　　　a.    in the same industry in which employees were employed or accruing

　　　　　　　　　　benefits under the Plan at the time the participant's benefits

commenced or would have commenced if the participant had not remained in or returned to work;

    b.  in the same trade or craft in which the participant was employed while working under the Plan, and

    c.  in the same geographic area covered by the Plan at the time that payment of benefits commenced or would have commenced benefits but for the participant's employment.

30.    With respect to the benefits of participants who were in the Intermountain Plan, the Plan further provides that for benefits accrued after July 1, 2005, for periods of service before July 1, 2005, the "prohibited employment rules under the Intermountain Plan shall apply."

31.    For former Rocky Mountain Plan and Plan retired participants who were not Intermountain Plan participants, with respect to benefits accrued before January 1, 1998, the Plan states that participants are engaged in prohibited employment for a month if they are prior to age 62 (i.e., prior to their Normal Retirement Date) and working in a category of employment covered by a collective bargaining agreement.

32.    For former Rocky Mountain Plan and Plan participants who were not Intermountain Plan participants, with respect to benefits accrued before January 1, 1998, participants are engaged in prohibited employment for a month if they are past age 62 and working in employment in which they receive credit under the Plan and earn 40 or more hours of service in that month.

33.    For former Rocky Mountain Plan and Plan retired participants who were not Intermountain Plan participants, with respect to benefits accrued after December 31, 1997, participants are engaged in prohibited employment for a month if they are prior to age 62 and working in in any employment or self-employment in the retail food industry within the states of Arizona or New Mexico.

34.    For former Rocky Mountain Plan and Plan retired participants who were not Intermountain Plan participants, with respect to benefits accrued after December 31,

1997, participants are engaged in prohibited employment for a month if they are working on or after age 62 in employment of 40 hours or more or 8 days or more in a month in which the participant receives payment for work that is:

       a.  in the same industry in which employees were employed or accruing benefits under the Plan at the time the participant's benefits commenced or would have commenced if the participant had not remained in or returned to work;

       b.  in the same trade or craft in which the participant was employed while working under the Plan or supervisory activities related to such trade or craft, and

       c.  in any state in which covered employment was performed when the participant commenced pension benefits or would have commenced benefits but for the participant's employment.

    35.    Although the definitions and Plan provisions governing prohibited employment for the Rocky Mountain Plan and Desert States Plan participants are different than the prohibited employment for former Intermountain Plan participants, the Plan's summary plan description ("SPD") fails to disclose any of the differences or that such provisions were amended as set forth below.

**C.  Plan Amendments that Reduced Accrued Benefits and the Rate of Future Benefit Accrual without Notice**

    36.    Upon information and belief, prior to May 2, 1991, a suspension of benefits for retired participants in the Intermountain Plan was permitted only if a retiree returned to work in employment covered by a collective bargaining agreement under which the employer was required to contribute to the Intermountain Plan.

    37.    Upon information and belief, by amendment purporting to be effective May 2, 1991 ("1991 Intermountain Plan Amendment"), the Intermountain Plan was amended to purport to expand the suspension of benefits provisions by providing that on and after May 2, 1991, benefits were suspended if a retired participant began working after retirement and

during such post-retirement employment worked more than 40 hours per month in the same industry, same trade or craft and same geographic area as the participant's work under the Intermountain Plan.

38.    The 1991 Intermountain Plan Amendment purporting to expand the Plan's suspension of benefit rules reduced accrued benefits in violation of ERISA 204(g), 29 U.S.C. § 1054(g).

39.    No notice in advance of the 1991 Intermountain Plan Amendment was given to participants informing them that their future benefit accruals would be reduced by the 1991 Intermountain Plan Amendment.

40.    Prior to December 31, 1997, a suspension of benefits for retired participants during periods prior to age 62 under the Rocky Mountain Plan and the Plan was only permitted the if a retiree was working in employment covered by a collective bargaining agreement under which the employer was required to contribute to the Plan.

41.    Prior to December 31, 1997, a suspension of benefits for retired participants beginning at age 62 under the Rocky Mountain Plan and the Plan was only permitted if a retiree was working in employment in which the participant received 40 or more hours of credited service under the Plan.

42.    By amendment purporting to be effective January 1, 1998 ("1998 Plan Amendment"), the Plan was amended to expand the suspension of benefits provisions by providing that for periods prior to age 62, a retired participant's benefits would be suspended for "any employment or self-employment in the retail food industry within the States of Arizona and New Mexico",

43.    The 1998 Plan Amendment also purported to expand the suspension of benefits provisions by providing that on and after age 62, a retired participant's benefits would be suspended if the participant worked 40 hours or 8 days or more in a month in employment or self-employment in the same industry and the same trade or craft and in any state in which employment was performed as a covered employee under the Plan

during periods. The 1998 Plan Amendment purporting to expand the Plan's suspension of benefit rules reduced accrued benefits in violation of ERISA § 204(g), 29 U.S.C. § 1054(g).

44.    No notice in advance of the 1998 Plan Amendment was given to participants informing them that their future benefit accruals would be reduced by the 1998 Plan Amendment.

45.    In 2004, the Supreme Court rendered an opinion in *Central Laborers Pension Fund v. Heinz*, 541 U.S. 739 (2004), which held that plan amendments expanding the scope of suspension of benefits provisions (such as the 1991 Intermountain Plan Amendment and the 1998 Plan Amendment) violated ERISA § 204(g), 29 U.S.C. § 1054(g).

46.    Following the Supreme Court decision in *Heinz,* the Internal Revenue Service issued a revenue procedure, Rev. Proc. 2005-23, as amended, which was designed, *inter alia*, to afford plans and contributing employers protection from having the plan disqualified for taxation purposes under the Internal Revenue Code.

47.    Rev. Proc. 2005-23, as amended applied only to amendments that were adopted prior to January 1, 2007.

48.    In Rev. Proc. 2005-32, the IRS explicitly stated that the revenue procedure "has no effect on the rights of any party under section 204(g) of the Employee Retirement Income Security Act of 1974 (ERISA) or any other law."

49.    Upon information and belief, Defendants knew no later than 2004 that the 1998 Plan Amendment and the 1991 Intermountain Plan Amendment were unlawful to the extent they were adopted without advance notice of a reduction in the rate of future benefit accruals and to the extent they reduced accrued benefits.

50.    Upon information and belief, in or around 2007, by amendment purporting to be effective as of June 7, 2004, the Plan purported to adopt an amendment retroactively purporting to "re-adopt" the unlawful 1991 Intermountain Plan Amendment retroactively by imposing a new suspension of benefits provision that provided that a participant's benefits accrued prior to May 2, 1991 could be suspended if the participant returned to work following retirement in employment covered by a collective bargaining agreement

under which the employer was required to contribute to the Plan and that benefits accrued on and after May 2, 1991 could be suspended if the participant returned to work and worked 40 hours or more in employment or self-employment in the same industry and the same trade or craft and geographic area in which employment was performed as a covered employee under the Plan.

51.     By separate amendment, also purporting to be effective as of June 7, 2004, the Plan purported to adopt an amendment purporting to "re-adopt" the unlawful 1998 Plan Amendment by imposing a new suspension of benefits provision that provided that benefits accrued after December 31, 1997 could be suspended during periods prior to age 62 if the retired participant worked in any employment in the retail food industry within the States of Arizona or New Mexico and that during periods on or after age 62, pension benefits accrued after December 31, 1997 could be suspended if the retired participant worked 40 hours or more or 7 days or more in employment or self-employment in the same industry and the same trade or craft and in any state in which employment was performed as a covered employee under the Plan.

52.     The two Plan amendments purporting to change the suspension of benefits rules effective as of June 7, 2004 are together referred to herein as the "Heinz Amendments."

## CLASS ALLEGATIONS

53.     In addition to Plaintiff's individual claim for benefits and for violations of ERISA, this action is commenced pursuant to Fed. R. Civ. P. 23 as a class action consisting of the following two classes:

> Class 1: All Plan participants (and their surviving spouses and eligible beneficiaries) who did not commence receipt of benefits until after the Plan's Normal Retirement Date and who did not receive an actuarial increase or retroactive benefit payment with interest to account for the delay in receipt of their normal retirement benefits that were not subject to suspension.

> Class 2: All Plan participants (and their surviving spouses and eligible beneficiaries) who had accrued benefits under the Plan or predecessor plans prior to adoption of the 1991 Intermountain Plan Amendment or the 1998 Plan Amendment and/or Heinz Amendments.

54. The classes are so numerous that joinder is impracticable including because of the number of class members and because the members of the class are geographically dispersed.

55. There are questions of law and fact common to the members of the class that will be resolved by common answers, including whether declaratory and injunctive and other equitable relief is appropriate and whether benefits are due as a result of Defendants' violations of the Plan and ERISA including, *inter alia*:

      a. whether Defendants violated ERISA in failing to pay Class 1 members their retroactive retirement benefits with interest or an actuarial increase to account for the delay in payment of benefits following the participants' normal retirement date;

      b. whether Defendants violated the terms of the Plan in failing to pay Class 1 members their retroactive retirement benefits with interest or an actuarial increase to account for the delay in payment of benefits following the participants' normal retirement date;

      c. whether Defendants violated ERISA in reducing class members' benefits and in suspending Class 2 members' benefits based on the expansion of the suspension of benefits provisions in the 1991 Intermountain Plan Amendment or the 1998 Plan Amendment and/ or the Heinz Amendments;

      d. whether the 1991 Intermountain Plan Amendment, 1998 Plan Amendment and/or Heinz Amendments ever became effective and could form the basis for the suspension of benefits for participants who had accrued benefits prior to the adoption of those amendments;

      e. whether Defendants failed to give advance notice of the 1991 Intermountain Plan Amendment, 1998 Plan Amendments and/or Heinz Amendments

      f. whether Defendants caused the forfeiture of benefits in violation of

11

ERISA;

g.  whether Defendants breached their fiduciary duties by, *inter alia*: failing to determine participants' rights to benefits under the Plan with reference to nonforefeitable rights and accrued benefits under predecessor plans;  retroactively reducing accrued benefits; and failing to maintain documents and instruments required for proper administration of the Plan including predecessor plan documents;

h.  whether Defendants failed to maintain a written plan in accordance with the requirements of ERISA; and

i.  whether Defendants failed to provide accurate disclosures including notices of material modifications and accurate summary plan descriptions.

56.    Mr. Koch will fairly and adequately represent the interests of the class members. He has diligently pursued his claims and engaged the undersigned experienced ERISA and class action counsel.

57.    The prosecution of separate proceedings by the individual members of the classes would create a risk of inconsistent or varying adjudications that would be dispositive of the interests of other members not parties to the litigation or substantially impair or impede their ability to protect their interests.

58.    Upon information and belief, Defendants have acted or refused to act on grounds generally applicable to the classes as a whole by engaging in the same violations of ERISA and the terms of the Plan with respect to the classes, thereby making declaratory relief and corresponding injunctive and equitable relief appropriate with respect to the class as a whole.

59.    A class proceeding is superior to other available methods for the fair and efficient adjudication of this controversy including, *inter alia*, because:

a.  the class members have suffered from the same violations of ERISA and the numbers and likely geographic diversity of class members make joinder impractical; and

b.  the high cost and likely necessity for actuarial experts to assist in the prosecution of the issues involved in this case, along with the relatively modest sums that may be involved for individual participants likely constitute a significant and recurring obstacle to the ability of individual class members to retain competent and experienced ERISA counsel and marshal the resources necessary to prosecute these complex ERISA violations in separate legal proceedings yet likely have caused and will continue in the future to cause loss of valuable pension and ERISA rights unless remedied through injunctive and other appropriate relief.

## COUNT I
### (TO REDRESS VIOLATIONS OF THE TERMS OF THE PLAN PURSUANT TO ERISA SECTION 502(a)(1)(B))

60.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

61.    By the acts and omissions set forth above, including, inter alia, by failing to provide Mr. Koch and similarly situated Class 1 members with retroactive benefits with interest or an actuarial increase to account for the delay between their Normal Retirement Date and their commencement of benefits with respect to benefits that were not subject to a suspension of benefits for working in Prohibited Employment, Defendants violated the terms of the Plan.

62.    As a proximate result of Defendants' violations of the terms of the Plan, Plaintiff and Class 1 members were harmed and deprived of benefits due under the terms of the Plan.

63.    As a result of Defendants' violations of the terms of the Plan, Plaintiff and Class 1 members are entitled to an order declaring that Defendants violated the terms of

the Plan, enjoining Defendants from violating the terms of the Plan and directing Defendants to pay Plaintiff and Class 1 members all benefits with actuarial increases or retroactive benefits with interest from their Normal Retirement Dates to the date of commencement of benefits, together with prejudgment interest, attorneys' fees and costs.

## COUNT II
## (TO REDRESS VIOLATIONS OF ERISA'S ACTUARIAL EQUIVALENCE AND VESTING REQUIREMENTS)

64.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though set fully set forth herein.

65.    ERISA § 203, 29 U.S.C. § 1053, and regulations thereunder provide minimum vesting standards and set forth the conditions under which a participant's right to benefits under a plan becomes nonforfeitable.

66.    ERISA § 203(a), 29 U.S.C. § 1053(a), provides in relevant part that "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age..."

67.    ERISA § 3(24), 29 U.S.C. § 1002(24) defines "accrued benefit" as "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age ..."

68.    ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) provides in pertinent part: "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age ... the employee's accrued benefit ... shall be the actuarial equivalent of such benefit ...

69.    By the acts and omissions complained of above, including by failing to provide to Mr. Koch and similarly situated Class 1 members retroactive benefits with interest, or an actuarial increase, to account for the delay between their Normal Retirement Date and their commencement of benefits with respect to benefits that were not subject to

a suspension  for working in Prohibited Employment Defendants violated ERISA §§ 203 and 204(c)(3) and regulations thereunder.

70.    By the acts and omissions complained of above, including by suspending benefits based on the application of the 1991 Intermountain Plan Amendment, the 1998 Plan Amendment and the Heinz Amendments, Defendants violated ERISA § 203 and regulations thereunder.

71.    As a proximate result of Defendants' violations of ERISA §§ 203 and 204, Mr. Koch and class members have been harmed and, *inter alia*, have been deprived of rights under ERISA and vested nonforfeitable benefits.

72.    Plaintiff and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA § 203, 204(c)(3) and applicable regulations; enjoining Defendants from failing to pay actuarial increases or retroactive benefits with interest to account for the delay in receipt of retirement benefits between Normal Retirement Date and commencement of benefits to Plaintiff and Class 1 members; enjoining Defendants from suspending Plaintiff and Class 2 members' benefits based on application of the unlawful 1991 Intermountain Plan Amendment, 1998 Plan Amendment and/or Heinz Amendments and to immediately make Plaintiff and all class members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to expand the scope of the suspension of benefits; requiring Defendants to disgorge all profits and benefits gained from the wrongful violations of ERISA's vesting requirements; enjoining Defendants to pay vested benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

///

///

## COUNT III
### (TO REDRESS VIOLATIONS OF ERISA'S ACCRUAL OF BENEFITS REQUIREMENTS PURSUANT TO SECTIONS 502(a)(1)(B) AND (a)(3))

73.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

74.    Section 204(g) of ERISA, 29 U.S.C. § 1054(g), provides in part:

(g) Decrease of accrued benefits through amendment of plan
(1) The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in section 1082(c)(8) or 1441 of this title.
(2) For purposes of paragraph (1), a plan amendment which has the effect of–
(A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations), or
(B) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits. In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the preamendment conditions for the subsidy.
...

75.    Section 204(h) of ERISA, 29 U.S.C. § 1054(h), as in effect in May 1991 and January 1998 provided in relevant part:

(h) Notice of Significant Reductions in Benefit Accruals
(1) A plan described in paragraph (2) may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date, to—
(A) each participant in the plan,
(B) each beneficiary who is an alternate payee (within the meaning of section 1056(d)(3)(K) of this title) under an applicable qualified domestic relations order (within the meaning of section 1056(d)(3)(B)(i) of this title)…

76.    In accordance with settled law under ERISA, plan amendments adopted in violation of ERISA §§ 204(g) and (h) never become effective.

77.    Because the 1991 Intermountain Plan Amendment purporting to expand the circumstances under which benefits could be suspended unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA §§ 204(g)

16

and (h), 29 U.S.C. §§ 1054(g) and (h), the 1991 Intermountain Plan Amendment never became effective.

78.    Because the 1998 Plan Amendment purporting to expand the circumstances under which benefits could be suspended unlawfully reduced accrued benefits and reduced the rate of future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the 1998 Plan Amendment never became effective.

79.    Because the Heinz Amendments purporting to retroactively expand the scope of the suspension of benefits provisions unlawfully reduced accrued benefits and reduced the rate for future benefit accruals in violation of ERISA §§ 204(g) and (h), 29 U.S.C. §§ 1054(g) and (h), the Heinz Amendments never became effective.

80.    By the acts and omissions complained of above, including, *inter alia,* by amending the Plan to reduce accrued benefits, by failing to give notice of a significant reduction in the rate of future benefit accruals, by failing to disclose Plan amendments and by calculating and paying benefits and determining the right to benefits based on unlawful and/or undisclosed Plan amendments, Defendants violated ERISA, including, *inter alia* ERISA §§ 204(g) and (h) and applicable regulations.

81.    Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3),  provides that a civil action may be brought by a participant (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan.

82.    Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that: A civil action may be brought -

(1) by a participant or beneficiary - . . .
                    ***
(B) to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

83.    As a proximate result of Defendants' violations of ERISA, Mr. Koch and Class 2 members have been harmed and, *inter alia*, have been deprived of rights and accrued benefits due or to become due.

84.    Plaintiff and Class 2 members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants violated ERISA § 204 and applicable regulations; enjoining Defendants from suspending benefits based on application of the unlawful 1991 Intermountain Plan Amendment, 1998 Plan Amendment and/or Heinz Amendments and to immediately make Plaintiff and all class members whole by restoring all benefits wrongfully withheld; surcharging the fiduciaries; reforming the Plan to eliminate the provisions of the Plan amendments purporting to expand the scope of the suspension of benefits provisions and declaring that such amendments never became effective; requiring Defendants to disgorge all profits and benefits gained from the wrongful suspension of benefits; enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed; and providing such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT IV
### (TO REDRESS VIOLATIONS OF ERISA FIDUCIARY DUTY REQUIREMENTS)

85.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

86.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) provides in relevant part:

(1) Subject to Sections 403(c) and (d), 4042, and 4044, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
(A)  for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a

like character and with like aims;

\*\*\*

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and title IV.

87.     Defendants have a fiduciary responsibility to provide Plaintiff and class members with truthful and adequate disclosures of the suspension of benefits provisions and to administer the plan in accordance with ERISA and the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

88.     By the acts and omissions complained of above, including, *inter alia*, by failing to adequately provide notice of Plan provisions, failing to give advance  notice to participants that the Plan was amended to expand the scope of the suspension of benefits provisions, by applying suspension of benefits amendments to retroactively decrease accrued vested benefits, by depriving Plaintiff and class members of rights protected by ERISA and the terms of the Plan, by failing to determine participants' rights to benefits under the Plan with reference to rights under predecessor plans and ERISA provisions that provide for benefits and rights that could not be forfeited and retroactively reduced and by failing to maintain documents and instruments required for proper administration of the Plan including predecessor plan documents, Defendants breached their fiduciary duties to Plaintiff  and class members.

89.     As a proximate result of Defendants' breaches of fiduciary duty, Plaintiff and class members have been harmed and, *inter alia*, been deprived of rights protected by the terms of the Plan and ERISA.

90.     Plaintiff and class members are entitled to declaratory, injunctive and other equitable relief, including but not limited to, an order, *inter alia*: declaring that Defendants breached their fiduciary duties and violated ERISA § 404 and applicable regulations; enjoining Defendants from applying the unlawful the unlawful 1991 Intermountain Plan Amendment, 1998 Plan Amendment and/or Heinz Amendments purporting to expand the

scope of the suspension of benefits rules; surcharging the fiduciaries, reforming the Plan, *inter alia*, to eliminate Plan amendments that purported to expand the suspension of benefits provisions and declaring that such amendments never became effective and enjoining Defendants to and to immediately make Plaintiff and all class members whole by restoring benefits in accordance with the terms of the Plan as reformed; requiring Defendants to disgorge all profits and benefits gained from their breaches of fiduciary duty; and such other and further relief as the Court deems just and proper, together with pre-judgment interest, attorneys' fees and costs.

## COUNT V
## (TO REDRESS VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS)

91.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

92.    Section 102 of ERISA, 29 U.S.C. § 1022, Summary Plan Description, provides in relevant part:

(a)    A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 104(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan. A summary of any material modification in the terms of the plan and any change in the information required under subsection (b) of this section shall be written in a manner calculated to be understood by the average plan participant and shall be furnished in accordance with section 104(b)(1) of this title.

(b) The summary plan description shall contain the following information: . . . the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of

1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title), the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 503 of this title).

93.    Section 104(b) of ERISA, 29 U. S. C. § 1024(b), Publication of summary plan description and annual report to participants and beneficiaries of plan, provides in relevant part:

(1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a) of this title–

(A)  within 90 days after he becomes a participant, or (in the case of a (beneficiary) within 90 days after he first receives benefits, or

(B)  if later, within 120 days after the plan becomes subject to this part. The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, every fifth year after the plan becomes subject to this part an updated summary plan description described in section 1022 of this title which integrates all plan amendments made within such five-year period, except that in a case where no amendments have been made to a plan during such five-year period this sentence shall not apply. Notwithstanding the foregoing, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, the summary plan description described in section 1022 of this title every tenth year after the plan becomes subject to this part. If there is a modification or change described in section 1022(a) of this title . . . a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan... .

(2)  The administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent

information to all participants (including such places as the Secretary may prescribe by regulations).

(3)    Within 210 days after the close of the fiscal year of the plan, the administrator (other than an administrator of a defined benefit plan to which the requirements of section 1021(f) of this title applies) shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of section 1023(b)(3) of this title and such other material (including the percentage determined under section 1023(d)(11) of this title) as is necessary to fairly summarize the latest annual report.

94.    Section 402 of ERISA, 29 U.S.C. § 1102, requires every employee benefit plan to be in writing and specify the basis on which payments are made to or from the plan.

95.    By the acts and omissions complained of above, Defendants violated ERISA §§ 102, 104 and 402 and regulations thereunder

96.    As a proximate result of Defendants' violations of ERISA §§102, 104, and 402, Plaintiff and class members have been harmed and, *inter alia*: have been deprived of material disclosures required to be made by Plan fiduciaries and have been deprived of the ability to make timely, informed decisions regarding their retirement benefits, their employment following retirement, their savings, and their decisions regarding whether and when to retire, and Defendants have been unjustly enriched.

97.    Plaintiff and class members are entitled to declaratory, injunctive, and other equitable relief, including but not limited to, an order declaring that Defendants violated ERISA §§ 102, 104, and 402 and applicable regulations, enjoining Defendants from failing to comply with their disclosure obligations and from applying suspension of benefits provisions and amendments that were not disclosed in accordance with ERISA and to recalculate all class members' benefits, together with all other appropriate equitable and make-whole relief including surcharge of the Plan fiduciaries, disgorgement of any unjust enrichment received by the Defendants, and reforming the Plan as necessary or appropriate, together with pre-judgment and post-judgment interest, attorneys' fees, and costs.

**COUNT VI**
**(TO REDRESS VIOLATIONS OF ERISA'S CLAIMS PROCEDURE REQUIREMENTS)**

98.    Plaintiff repeats and realleges each allegation set forth in the prior paragraphs as though fully set forth herein.

99.    Section 503 of ERISA, 29 U.S.C. §1133 provides in relevant part:

In accordance with regulations of the Secretary, every employee benefit plan shall--
(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits  has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

100.    ERISA § 503, 29 U.S.C. § 1133, and regulations thereunder, 29 C.F.R. § 2560.503-1, provide that plan administrators, *inter alia*, must provide claimants whose claims for benefits are denied with the specific reasons for the claim denial, must provide claimants with documents and information showing that plan provisions have been applied consistently with respect to similarly situated claimants, must have administrative procedures and safeguards designed to ensure that benefit determinations are made in accordance with governing plan documents and that plan provisions have been applied consistently with respect to similarly situated claimants, must provide claimants with the plan provisions relied upon, and must provide a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary.

101.    By the acts and omissions set forth above, including, but not limited to, failing to provide a response to Plaintiff's claim for benefits and failing to provide accurate information about the suspension of benefits and Plan amendments in the letters to Plaintiff suspending his benefits, Defendants violated ERISA's claims procedure requirements.

102.    As a result of Defendants' acts and omissions set forth above, Plaintiff has

been harmed and his rights to benefits and to pursue his claims were chilled, delayed and thwarted.

103.    Plaintiff is entitled to appropriate declaratory, injunctive and equitable relief, including an order enjoining Defendants to provide a reasonable claims process and to follow ERISA's claims procedure requirements, requiring Defendants to provide appropriate make-whole relief, surcharging the Trustees and ordering Defendants to disgorge and remedying Defendants' unjust enrichment.

WHEREFORE, Plaintiff requests that Judgment be entered in his favor against Defendants as follows:

A.    Declaring that Defendants violated the terms of the Plan by not paying Plaintiff and Class 1 benefits retroactive benefits with interest or an actuarial increase in monthly benefits to account for the delay between their Normal Retirement Dates and commencement of benefits;

B.    Declaring that Defendants violated ERISA §§ 102, 104, 203, 204, 402, 404, 503 and regulations thereunder;

C.    Enjoining Defendants from violating the terms of the Plan;

D.    Enjoining Defendants from violating ERISA §§ 102, 104, 203, 204, 402, 404, 503 and regulations thereunder and enjoining any of the challenged amendments from taking effect;

E.    Ordering reformation of the Plan, *inter alia*, to eliminate the provisions of the 1991 Intermountain Plan Amendment, the 1998 Plan Amendment and the Heinz Amendments purporting to expand the scope of the suspension of benefits provisions, declaring that such amendments never became effective and enjoining Defendants to pay benefits in accordance with the terms of the Plan as reformed;

F.    Ordering Defendants to disgorge the value of the benefits unjustly withheld from Plaintiff and class members together with all profits attributable thereto;

24

G.   Surcharging the Board of Trustees for the full amount of Plaintiff's and class members' withheld retirement benefits and such other amounts to make Plaintiff and class members whole;

H.   Enjoining Defendants to recalculate Plaintiff's and class members' retirement benefits and restore the benefits that were reduced and withheld make Plaintiff and class members whole for all losses, including pre-judgment and post-judgment interest;

I.   An award of attorneys' fees and costs pursuant to ERISA § 502(g) and/or the common fund theory, and

J.   Awarding such other and further relief the Court deems just and proper.

**DATED** this 5th day of December, 2018.

**MARTIN & BONNETT, P.L.L.C.**
By: s/ Susan Martin
Susan Martin
Jennifer Kroll
Michael M. Licata
4647 N. 32nd St., Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900

*Attorneys for Plaintiff*